Zoilo y Manuel Méndez Ríos, demandantes y recurridos, v. Eastern Sugar Associates, luego Fajardo Eastern Sugar Associates, ahora C. Brewer Puerto Rico, Inc., demandada y recurrente.

*Número:* R-62-255    *Resuelto:* 16 de febrero de 1965

*Fiddler, González & Rodríguez,* y *Víctor M. Pons, Jr.,* abogados de la recurrente; *Antonio Figueroa Rivera,* abogado de los recurridos.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

El Juez Asociado Señor Dávila emitió la opinión del Tribunal.

En el año 1923 el padre de los aquí demandantes permutó unas tierras con The Juncos Central Company, firma dedicada a la elaboración de azúcar de caña. Estipularon, por la cuarta

cláusula de las condiciones convenidas para la permuta, lo siguiente:

"Queda expresamente convenido que la Corporación THE JUNCOS CENTRAL COMPANY se obliga a respetar y cumplir con el contrato de arrendamiento que el compareciente don Manuel Méndez Dueño tiene convenido con la Sociedad Anónima Sucreries de Saint Jean y al cual se ha hecho referencia en el apartado tercero de esta escritura y a la vez se obliga a moler en su factoría todas las cañas que se produzcan en terrenos que sean hoy de la propiedad del señor Méndez, sus herederos o sucesores *tomando por base el contrato más liberal que haga dicha Corporación*, y en compensación de este derecho don Manuel Méndez Dueño por sí y como apoderado de su esposa RENUNCIA de una manera formal y expresa su derecho a cruzar las vías férreas de The Juncos Central Company con otras vías de su propiedad de acuerdo con lo estipulado en la cláusula quinta(¹) de la escritura número ciento treinta y tres de veintidós de mayo de mil novecientos diez y siete otorgada ante el Notario, don Francisco González Fagundo." (Énfasis suplido.)

Las tierras y el ingenio pertenecientes a The Juncos Central Company luego de una serie de eventos y sucesos que ahora no es necesario relatar vinieron a pertenecer a la Eastern Sugar Associates, luego a la Fajardo Eastern Sugar y finalmente a la actual demandada C. Brewer & Co.

En el año 1952 los demandantes, por su abogado, dirigieron una comunicación a la Eastern Sugar Associates haciendo referencia a la "cláusula cuarta" antes transcrita e informándole que "[d]esde hace varios años . . . [los demandantes] han estado moliendo con Eastern Sugar Associates cañas producidas en terrenos que, en la fecha de tal Escritura, eran propiedad de don Manuel Méndez Dueño, hoy de mis referidos

---

(¹) En el año 1917 don Manuel Méndez, padre de los demandantes, mediante la escritura Núm. 133 de fecha 22 de mayo de 1917 cedió una servidumbre de vía férrea sobre terrenos de su propiedad como predio sirviente y al constituirla se reservó, mediante la cláusula quinta, "el derecho que le concede The Juncos Central Company, de poder cruzar las vías férreas de The Juncos Central Company objeto de esta servidumbre, con otras vías férreas."

clientes como sus herederos y sucesores." Además le informaba que "hemos tenido conocimiento de que Eastern Sugar Associates ha liquidado contratos a distintos colonos a un por ciento mucho mayor que la liquidación que ha efectuado a los señores Méndez Ríos." Y terminaba solicitando que "se les compense y pague [por las cañas molidas] el balance a que monta la diferencia entre la liquidación que se les ha hecho y las liquidaciones más liberales, que se ha hecho a otros colonos."

La compañía azucarera rehusó responsabilidad bajo la cláusula invocada por los hermanos Méndez Ríos.

Radicaron entonces los hermanos Méndez un recurso de sentencia declaratoria. Luego de exponer los antecedentes a que nos hemos referido suplicaron, entre otras cosas, "que esta Honorable Corte dirima la controversia existente entre las partes de este caso y dicte sentencia declaratoria decretando que, estando en vigor y siendo obligatoria para los demandantes la renuncia de sus causantes a cruzar las vías férreas de que aquí se trata,[2] es obligatorio para la demandada el cumplimiento del convenio que fue y ha sido condición, objeto o causa para tal renuncia, o sea, el de moler todas las cañas producidas en terrenos de los demandantes (herederos y sucesores de los esposos don Manuel Méndez Dueño y doña Micaela Ríos) teniendo por base el contrato más liberal; que, en su consecuencia, decrete que, no habiendo hecho la parte demandada dicha liquidación a ninguno de estos demandantes en año alguno de aquellos en los cuales ellos han molido sus cañas con ella, sino liquidaciones y contratos más bajos, ésta debe pagarles la diferencia entre los contratos y

---

[2] Existe una confusión por parte de los demandantes y del tribunal de instancia en cuanto a cual fue la obligación asumida por don Manuel Méndez Dueño. En ocasiones hacen referencia a lo realmente convenido "renuncia a cruzar unas vías férreas con otras vías férreas" pero en otras tratan el asunto como si el compromiso asumido por The Juncos Central fuera en pago de una servidumbre. La servidumbre había sido constituida con anterioridad al convenio celebrado en el año 1923.

liquidaciones que les ha hecho y los contratos y liquidaciones que ha debido hacerles; que en cuanto a los años en que los demandantes no molieron sus cañas con la demandada, habiendo ella, no obstante, utilizado en su beneficio esta servidumbre, el Tribunal determine que la demandada tiene el deber de pagar por ese uso, fijando al efecto como norma, según contratos hechos y/o asumidos por la demandada, a quince centavos por cada tonelada de caña pasada por las vías tendidas sobre esas servidumbres; [y] que le conceda a cada demandante, por los conceptos aquí envueltos, no menos de $175,000.00 ó su equivalente en azúcares . . . ."

El tribunal de instancia resolvió que los demandantes no tenían derecho a recibir compensación alguna por aquellos años en los cuales no molieron sus cañas en el ingenio de la demandada. (³) Además dictaminó que "el propósito de los contratantes [al estipular que al Sr. Dueño y a sus herederos y sucesores se les liquidaría la caña tomando por base el contrato más liberal que haga dicha corporación] a cambio de la exclusividad de la servidumbre procurada [sic] por los Méndez a la empresa azucarera, ésta compensaría su caña del mismo modo que liquidaría al colono con la caña de mayor rendimiento." En otras palabras "que el contrato más liberal ha de ser el de aquel colono cuya caña haya alcanzado en la molienda de cada año el mayor rendimiento."

No podemos concurrir con ese dictamen. No es la interpretación correcta de la cláusula "tomando por base el contrato más liberal que haga dicha corporación."

A la fecha en que el causante de los demandantes y la Central Juncos estipularon la norma cuya interpretación es el objeto del litigio, era la costumbre en Puerto Rico liquidar la caña a los colonos a un tipo fijo de rendimiento. Tantas libras de azúcar por cien libras de caña independientemente del verdadero rendimiento en azúcar de la caña. Así, se convenía en liquidarle al colono 5, 6 ó más libras de azúcar

---

(³) Los demandantes no recurrieron de esta determinación.

por cada cien de caña. No eran uniformes las liquidaciones y los colonos eran tratados de acuerdo con su poder económico. Recibía mejor trato aquel colono que estaba en mejor posición para negociar con la central. Ver *Vidal* v. *Fernandez*, 104 F.2d 606, 609 (1st Cir. 1939). Esto explica por qué se convino con el señor Dueño el que sus cañas se liquidarían "tomando por base el contrato más liberal que haga dicha corporación," atendida la práctica de concederle trato preferente y más liberal a algunos colonos.

En *Polanco* v. *Societé Anonyme*, 33 D.P.R. 234 (1924) encontramos un ejemplo de lo expuesto. Polanco convino con la central el que se le liquidaran sus cañas a base de seis libras de azúcar por cada cien de caña. Estipuló sin embargo que la central se comprometía "a beneficiar al Sr. Nicolás Polanco durante la vigencia de éste contrato con el beneficio concedido sobre el pago de las cañas a cualquier otro colono". Como condición se estableció que cultivaría un número determinado de cuerdas de caña. Polanco instó el pleito alegando que la central había convenido con otros colonos en liquidarle las cañas a base de 7 libras de azúcar por cada cien de cañas y sin embargo a él se las liquidaba al 6%. La demanda fue declarada sin lugar por entender el tribunal de instancia que el demandante no había cumplido con la condición impuesta pero en apelación revocamos y dictamos sentencia a su favor.

Esta forma de liquidar las cañas—irritante por el privilegio que concedía a unos y negaba a otros—continuó por muchos años. Requirió acción legislativa para corregirla. No fue hasta el año 1937 que la Asamblea Legislativa aprobó la Ley Núm. 112 de 13 de mayo de 1937 (⁴) estableciendo una fórmula uniforme de liquidar las cañas de acuerdo con su rendimiento. Siguieron a este estatuto la Ley Núm. 213 del 15 de mayo de 1938; la Ley Núm. 221 de 12 de mayo de 1942

---

(⁴) Se impugnó la constitucionalidad de la Ley Núm. 112 pero la misma fue sostenida por la Corte de Distrito Federal y confirmada en apelación por la Corte de Apelaciones para el Primer Circuito en *Vidal* v. *Fernandez*, 104 F.2d 606 (1st Cir. 1939).

y la Núm. 426 de 13 de mayo de 1951. Ver Art. 5-I de la Ley de 1951, 5 L.P.R.A. sec. 374 (ed. 1963) donde aparece la tabla uniforme de liquidaciones. Conforme a la fórmula uniforme de liquidar, cuando un colono recibe más azúcar que otro por la misma cantidad de caña, se debe a la diferencia del rendimiento en sucrosa de una y otra caña y no al hecho de que la central le haya dado un trato más liberal. Esta fórmula garantiza a la central una participación razonable por la elaboración del azúcar, pero asimismo le garantiza al colono su participación en el mayor rendimiento de sus cañas. Bajo la fórmula usada anteriormente, concediéndole un por ciento fijo al colono, las centrales se beneficiaban grandemente del mayor rendimiento de las cañas. Debido a ello hacían concesiones y otorgaban privilegios a unos pocos colonos a expensas de la enorme mayoría, que constituían un grupo económico débil.

Así vemos que la cláusula convenida por el señor Méndez con la central en el año 1923 tenía su razón de ser en la práctica existente para aquella época en la industria, de hacer concesiones en la liquidación de las cañas a ciertos colonos por razones especiales. En forma alguna podía referirse la disposición en controversia al colono que mayor rendimiento tuviera en sus cañas ya que a la fecha en que se celebró el contrato no se liquidaba a los colonos de acuerdo con el rendimiento de sus cañas y sí como hemos dicho antes, a base de un por ciento específico por cada cien libras de caña.

Se presentó en evidencia por la parte demandante, copia del contrato celebrado entre la demandada y una firma agrícola denominada Felícita Corporation. Es un contrato de constitución de servidumbre sobre unas fincas de la Felícita Corporation a favor de unas pertenecientes a la demandada. En el contrato, pactado por diez años, pero que tuvo vigencia solamente durante los años 1948 al 1956, se estipuló que la Central le garantizaría a Felícita Corporation un rendi-

miento de 7.365 libras de azúcar por cada cien libras de caña. El tribunal de instancia no consideró este contrato como el más liberal otorgado por la demandada por entender que la garantía de 7.365 libras de azúcar por cada cien de caña era el pago de la servidumbre constituida a favor de la finca perteneciente a la demandada. Evidentemente es correcta la conclusión del tribunal de instancia. La garantía de un por ciento específico de rendimiento era el pago de la servidumbre. No era un trato más liberal recibido por el colono. En efecto los demandantes no invocan ese convenio como representativo del contrato más liberal hecho por la demandada. Es interesante apuntar que las cañas de los demandantes tuvieron rendimiento en exceso de 7.365 libras de azúcar por cien de caña en todos los años en que estuvo vigente el contrato con Felícita Corporation excepto en dos zafras. Corresponden éstas a los años 1952 y 1954 en cuanto a don Zoilo Méndez y 1952 y 1953 en cuanto a don Manuel Méndez. (⁵)

Es evidente que es innecesario discutir las otras cuestiones planteadas por la demandada.

*Debiéndose interpretar el contrato objeto de esta acción en la forma expuesta anteriormente, procede revocar la sentencia que dictó el Tribunal Superior, Sala de Humacao, en 10 de septiembre de 1962 en cuanto condenó a la demandada a pagarle al demandante Zoilo Méndez Ríos la suma de $136,677.57 y al demandante Manuel Méndez Ríos la suma de $147,763.43 así como la condena de $20,000.00 para hono-*

---

(⁵) Rendimiento de las cañas de los demandantes durante el tiempo que estuvo vigente el contrato de Felícita Corporation.

| *Zoilo Méndez* | *Manuel Méndez* |
|---|---|
| 1948—8.215 | 1948—7.883 |
| 1949—7.681 | 1949—7.669 |
| 1950—7.808 | 1950—7.587 |
| 1951—7.550 | 1951—7.559 |
| 1952—6.830 | 1952—6.6045 |
| 1953—7.470 | 1953—7.3062 |
| 1954—6.577 | |
| 1955—No arrimó | |
| 1956—No arrimó | |

*rarios de abogado y se determina que las liquidaciones efectuadas por la demandada se ajustan al convenio entre las partes y que dicha demandada nada adeuda a los demandantes.*